UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA,                )

                          Plaintiff,          )

          -against-                       )          08 CR 413-01 (JSR)

STEVEN LAINO,                             )

                          Defendant.          )
-------------------------------------------------------------x


### PRESENTENCE MEMORANDUM OF STEVEN LAINO


RONALD L. KUBY [RK-1879]
DAVID PRESSMAN [DP-9136]

Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, New York 10011
(212) 529-0223 (t)
(212) 529-0644 (f)

Attorneys for Mr. Laino

Dated:  New York, New York
        August 18, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| -against- | )    08 CR 413-01 (JSR) |
| STEVEN LAINO, | ) |
| Defendant. | ) |

------------------------------------------------------------x

### PRESENTENCE MEMORANDUM OF STEVEN LAINO

Steven Laino is a recovering drug addict. But he is much more than that. Mr. Laino worked at the intersection of finance and technology, ascending to the role of Vice President at Credit Suisse First Boston and commanding an impressive salary. As his drug addiction, an ailment that began in his teenage years, became more severe, Laino's priorities shifted and his performance suffered. Laino moved from high-paying job to high-paying job, unfortunately dragging his crippling addiction along with him. A man with so much potential and so many possibilities, with a powerful mind, a loving father of his only son, became a crack and cocaine addict, first and foremost.

Broke and with an expensive daily habit, Laino agreed to transport small amounts of cocaine from his supplier to a local dealer. For his services as a mule, Laino was paid in cocaine, which he personally and quickly consumed. Fortunately, Laino was caught. As this Court will soon learn, and the Probation Office's report reflects, Laino's arrest was an immediate, startling, and effective wake-up call, one that has forever changed Steven Laino's life. His arrest on November 14, 2007 was Mr. Laino's first, only, and last interaction with the criminal justice system. It was also the last time he ever used illicit drugs of any kind.

Pursuant to a plea agreement, and the Probation Office's own calculations, the applicable Guidelines offense level is 19.  Given Mr. Laino's lack of any criminal record, the plea agreement and Presentence Investigation Report both recognize that the applicable criminal history category is I.  As such, the Guidelines sentencing range is 30 to 37 months of imprisonment and the applicable fine range is $6,000 to $60,000.  The Probation Office itself recognizes Mr. Laino's situation as one in which a "variance from the guideline[s]" is warranted. (PSR at p. 20).[1]  They write,

> In accordance with the sentencing factors set forth in 18 U.S.C. §3553(a), it is our belief that the "nature and circumstances of the offense," coupled with the "history and characteristics of the defendant," are mitigating factors that warrant a variance from the guidelines range of imprisonment.  The defendant's role in this offense has been described as minor and it appears that his involvement was driven solely by his personal drug addiction.  In relation, following his arrest, Laino took immediate responsibility for his criminal conduct.  Most significantly, we recognize his post-arrest rehabilitation by overcoming a 40-year drug addiction by going "cold turkey."

(PSR at 20).  The Probation Office recommended a sentence of 12 months and 1 day followed by three-years of supervised release, and further recommended that no fine be charged.  (PSR at 19).[2]

Mr. Laino stands before this Court having done exactly what society demands of him: to clean up his act, to recover from his addiction, and to once again become a productive and law-abiding citizen.  Whatever he is doing, it is working.  There is no reason to disrupt, and every reason to not disrupt, this process of rehabilitation.  While pursuant to the terms of his agreement, Mr. Laino does not challenge the calculation under the Guidelines, he urges this

---

[1] Citations to "PSR" refer to the Probation Office's Sentencing Recommendation.

[2] Defendant agrees with and adopts the Probation Office's recommendation that no fine should be imposed in this case for the reasons articulated in the Presentence Investigation Report.  Accordingly, this Memorandum does not address this issue.

Court to impose an out-of-guidelines sentence of probation coupled with mandatory out-patient treatment, pursuant to 18 U.S.C. § 3553(a).

### A. The "History and Characteristics" of Steven Laino and the "Nature and Circumstances" of His Offense

18 U.S.C. § 3553(a)(1) requires this Court to consider "the nature and circumstances of the offense and the history and characteristics of" Mr. Laino when imposing sentence. Id.

Mr. Laino grew up fast. Born in Far Rockaway, Queens, he has lived his entire adult life in New York and New Jersey. His parents separated when he was in first grade and, for some time, he bounced between his parents' care, ultimately settling-in with his father. At the age of 16, Laino moved out of his father's home and into an apartment, alone. At about the same time, Mr. Laino began to experiment, use, and abuse illicit substances. His drug of choice, however, was and remained cocaine. Mr. Laino's cocaine use spiraled into a $50-$200 per day, daily, four-decade habit. For the most part, during his 40 year career as an addict, he remained functioning, able to maintain employment, often at senior levels.

Mr. Laino's son, Samuel Edmund Laino, is 18 years old and is Steven Laino's pride and joy. Samuel just completed his first year of college at the University of West Virginia. Mr. Laino is deeply proud of, and very close to, his son. Samuel earned a 3.3 grade point average this past year. Mr. Laino is so ashamed of his conduct that he has not told Samuel about his arrest.

Four years ago, Mr. Laino became romantically involved with Christine Press. In June, 2007, they were engaged to marry. Ms. Press suffers post traumatic stress disorder, and related mental diseases, as a result of her experience on September 11, 2001. At that time, Ms. Press worked on Water Street. Mr. Laino is instrumental to her care and well-being.

As a result of his drug addiction, Mr. Laino ruined his relationship with his previous spouse and, in 2005, lost his job as Vice President of Information Technology at Credit Suisse First Boston. His addiction had become so crippling, and his desire for healing so intense, that in March, 2005 he voluntarily checked himself into an in-patient drug recovery program at New York Presbyterian. At the conclusion of his in-patient treatment, Mr. Laino immediately sought out-patient treatment at St. Lukes-Roosevelt Hospital Center in April, 2005. Due to his dire financial situation, and the termination of his COBRA coverage, Mr. Laino was forced to stop out-patient treatment. By June, 2005, he had resumed his drug habit and continued down the path that ultimately led to his arrest and subsequent sobriety.

As on several occasions, on November 14, 2007 Steven Laino was looking for a fix. With no reliable income, he became a mule and agreed to transport a small quantity of cocaine from his supplier to another local drug dealer. He did this in exchange for cocaine to snort. Unbeknownst to him, federal authorities were conducing surveillance of his supplier; Mr. Laino was pulled over and arrested while making the delivery. From the moment Mr. Laino was stopped, he cooperated fully, candidly, and immediately. When his cell phone rang during his roadside encounter with the police, Mr. Laino informed the officer's that this was one of the drug suppliers and offered to provide whatever information he could to the officers.

## B. Mr. Laino's Candid, Complete, and Continuous Cooperation Warrants An Out-of-Guidelines Sentence Pursuant to the Factors Enumerated in 18 U.S.C. § 3553(a)

Beginning on the very night he was arrested, Mr. Laino agreed to cooperate fully and completely with federal authorities. From his arrest to present, he remained in contact with the federal agents who arrested him, told them what he knew, and did what they asked him to do. Mr. Laino also voluntarily offered a full proffer to AUSA Benjamin Naftalis, which the government can confirm. Mr. Laino's cooperation was neither motivated by a promised-§5K1.1

letter nor did Mr. Laino receive such a letter from the government. Instead, his cooperation was propelled by profound humiliation and remorse of an addict whose wildly out-of-control cocaine addiction drove him from the corporate suite at Credit Suisse to a federal prison.

18 U.S.C § 3553(a)(1) requires the Court to consider Mr. Laino's "history and characteristics." 18 U.S.C. § 3553(a)(1). The Second Circuit has recognized that a defendant's "efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1" is an appropriate consideration for an out-of-guidelines sentencing under 18 U.S.C. § 3553(a). United States v. Fernandez, 443 F.3d 19, 33 (2d Cir. 2006). See also United States v. Perry, 2008 WL 681343, at * 1(2d Cir. 2008)(summary opinion)(sentencing court is "now permitted to consider post-conviction rehabilitative efforts and failed cooperation despite the provisions of U.S.S.G. § 5K2.19 and in the absence of a § 5K1.1 letter from the government").

Mr. Laino's cooperation with authorities evinces two particularly important characteristics under § 3553(a). First, Mr. Laino's immediate and complete cooperation demonstrates his deep remorse for his criminal conduct and commitment to lead a law-abiding life. Mr. Laino's journey as a drug addict crashed on November 14, 2007. As handcuffs were clinched around his wrists, he knew immediately that "this" was not "him" and he was determined to "make it right." He did that in the only way he knew how, by telling law enforcement everything he knew, immediately and completely. Mr. Laino is, and was, embarrassed by his conduct; his cooperation with law enforcement demonstrates his profound remorse for ending up on the wrong side of the law and strong-hearted determination not to end up there again. His cooperation, however, demonstrates something else, as well. Mr. Laino's cooperation evinces his commitment to self-rehabilitation. He has attempted to come completely

clean with the authorities and with himself. He has told the Government everything he knows

and he has sought help heal his addiction.

> To the extent that a decision to cooperate with the authorities represents an expression of genuine remorse, and a decision to make amends to society and cut one's ties to the criminal underworld, it may indicate that the defendant's character is less incorrigible than it may have otherwise appeared, and that the need for protection of the public--a critical goal of sentencing under § 3553(a)(2)(C)--is to some extent reduced. If the effort to assist the authorities comes to nought, the defendant is not entitled to a reward, but even if his cooperation leads to no tangible benefit, it may still be relevant to an assessment of his character and his future dangerousness. That assessment is expressly the responsibility of the sentencing court under § 3553(a).

U.S. v. Torres Teyer, 2006 WL 3511885, at *9 (S.D.N.Y. 2006). As articulated by the Torres

Teyer court, Mr. Laino's full and candid cooperation with federal authorities from the moment

he was arrested is highly probative, with or without a government motion, of Mr. Laino's future

dangerousness and his character. Id.; see also id. at * 8 (recognizing that non-5K cooperation can

be indicative of "defendant's character and future dangerousness" under § 3553(a)(1)); 18 U.S.C.

§ 3553(a)(2)(c). Mr. Laino's cooperation "is significant and should not be overlooked" as it

"goes to the heart of the characteristics of this Defendant." United States v. Murray, 2005 WL

1200185, at *5 (S.D.N.Y. 2005).

In light of the § 3553(a) factors, and Mr. Laino's particular circumstances, an out of

guidelines sentence of probation and continued out-patient treatment would satisfy the statutory

mandate that sentences shall be "sufficient but not greater than necessary" to achieve the goals

articulated in 18 U.S.C. § 3553(a).

**C. Mr. Laino's Continued Sobriety and Need For Recovery Warrants an Out-of-Guidelines Sentencing Pursuant to 18 U.S.C. § 3553(a).**

Mr. Laino was a cocaine addict who used daily for close to 40 years. After an

unsuccessful and voluntary in-patient and out-patient regimen in 2005, Mr. Laino resumed his

cocaine use.  Following his arrest on November 14, 2007, Mr. Laino has been completely sober.

He is in recovery and actively participating in a twelve-step narcotics program.  His sobriety has

been documented by the Probation Office.  See PSI at ¶ 57 ("all random drug tests administered

by Pretrial Services, dating back to January 2008, have been negative.  A urinalysis administered

following the presentence interview also tested negative for the presence of illicit substances").

The Probation Office, in its recommendation for an out-of-guidelines sentence, observes that

"since his November 2007 arrest, he has remained drug-free without the assistance of a

structured substance abuse treatment program," and "[m]ost significantly, we recognize his post-

arrest rehabilitation by overcoming a 40-year drug addiction by going 'cold turkey.'"  (PSR at

20).

  For transporting a small amount of cocaine—the essence of the instant offense—Mr.

Laino was paid in cocaine.  He was, and as a "recovering addict" remains, sick.  However, Mr.

Laino's conduct following his arrest should provide this Court with great optimism for his

chances at rehabilitation.  The fact that he had no prior interaction with law enforcement

combined with the fact that the instant offense was wholly designed to feed Mr. Laino's out-of-

control addiction, coupled with the fact that Mr. Laino (who has been subject to weekly random

drug-tests) has not used cocaine in 9 months, are all signs that the current path he is on is the one

most likely to lead to recovery and to ensure that Mr. Laino leads a law-abiding life.  The

statutory goals of "deterrence," 18 U.S.C. § 3553(a)(2)(B), the "protect[ion of] the public," 18

U.S.C. §3553(a)(2)(C),  and of rehabilitation, 18 U.S.C. § 3553(a)(2)(D), are best served by

allowing Mr. Laino to continue on the path he is now on.

  Mr. Laino's conduct is "suggestive of an addict…Defendant no doubt had a drug

problem, but he was not violent and with treatment could succeed in the community.  His recent

employment and abstinence demonstrated as much." United States v. Jackson, 537 F.Supp.2d 990, 992-993 (E.D.Wis. 2008).  As Judge Weinstein noted in describing a defendant's record, as a basis for a downward departure, it is entirely appropriate to consider the relationship between the specific offenses and drug addiction.  Where "arrests result from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics," United States v. Hammond, 37 F.Supp.2d 204, 205 (E.D.N.Y. 1999), the relationship between the addiction and the crime required to feed the addiction is an appropriate consideration for an out of guidelines sentence.[3]

18 U.S.C. § 3553(a)(2)(D) requires considering an individual's medical and treatment needs in setting a sentence. Even under the Guidelines, sentences were to "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process." 28 U.S.C. § 991(b)(1)(C). Addiction recovery can "require up to a life-time of care to be truly successful."  United States v. Maier, 777 F.Supp. 293, 296 (S.D.N.Y. 1991).  Where a defendant, like Mr. Laino, has already successfully "started along the road to recovery, and the studies and h[is] doctors all point to the conclusion that incarcerating h[im] now and depriving h[im] of the benefit of long-term care will be counterproductive," an out of Guidelines sentence is both appropriate and just.  United States v. Maier, 777 F.Supp. 293, 296 (S.D.N.Y. 1991).

### D.  Mr. Laino's Adjustment to Community Based Supervision

In meeting this Court's obligation to impose "a sentence sufficient but not greater than necessary" to satisfy the need for sentencing articulated in 18 U.S.C. § 3553(a), Your Honor should find Mr. Laino's post-arrest behavior particularly comforting.  The Probation Office has documented Mr. Laino's "excellent" adjustment to supervision.

---

[3] While Hammond dealt with a downward departure, its logic is apropos to Mr. Laino's plea for an out of guidelines sentence.

> Since his release on bond, the defendant has been supervised by PSO J. Lerman. As a special condition of his release, Laino is subject to random drug tests. PSO Lerman has described the defendant's adjustment to community-based supervision as "excellent." Laino continues to report as directed and all urinalyses have been negative, to date.

(PSI at ¶ 5).[4] Mr. Laino's "excellent," id., adjustment to community based supervision provides further support for the appropriateness of an out of guidelines sentence of probation coupled with mandatory out-patient drug treatment in accordance with the "sufficien[cy]" mandate of §3553(a).

### E. Steven Laino's Sister, Linda Laino, Requires Mr. Laino's Care

In addition to his remarkable recovery since his arrest and his "excellent" response to supervision, (PSI at ¶ 5), a nonincarcerative sentence is also particularly appropriate for this Defendant, given his familial situation. In addition to supporting his college-aged son, Samuel, Mr. Laino has been called upon to support and care for his sister, Linda Laino, who following Mr. Laino's arrest was diagnosed with colorectal cancer.

With their mother in a senior citizen's home, Linda has turned to Mr. Laino for support. As this Court may recall, Mr. Laino, with the Court's permission, travelled to New Hampshire in order to pack up his sister's belongings and move her to Staten Island so that he can attend to her needs.

Some defendants at sentencing point to their families and their need for care as a mitigating factor for sentence; courts regularly reply, 'you should have thought about that before.' However, Mr. Laino could not have thought about Linda's needs before. She only recently developed cancer. She only recently became dependent upon Mr. Laino. Mr. Laino is now, for the first time in a long time, in a state-of-mind to take care of his family that so desperately needs him.

---

[4] Citations to "PSI" refer to the Probation Office's Presentence Investigation Report.

### F. Conclusion

The Probation Office has stated "it is our belief that the 'nature and circumstances of the offense,' coupled with the 'history and characteristics of the defendant,' are mitigating factors that warrant a variance from the guideline range of imprisonment." (PSR at p. 20). We agree. But we ask this Court to reject Probation's recommendation of a sentence of 12 months and 1 day—a recommendation they base on "the seriousness of the offence" and "general deterrence" – and impose a sentence of probation with mandatory out-patient drug treatment.

Steven Laino is a recovering addict. He acted as a mule in exchange for cocaine to snort. He has paid with his marriage, his career, his earnings, his health, his reputation, and his relationships. For the past 9 months, he has turned around his life. For the first time in decades, he is sober, fully-engaged with his family, coping with his sister's illness, and gainfully employed. For the past 9 months, he has proved himself an ideal candidate for probation.

18 U.S.C. § 3553(a) is designed to ensure that the criminal justice system does not unintentionally make matters worse for our community and the public. The public's interest is in seeing Steven Laino do exactly what he is doing. A sentence of time-served coupled with out-patient treatment would satisfy the mandates of governing law, the interests of justice (and health).

As of this writing, the criminal justice system has saved Steven Laino. We ask this Court to not change course. Keep Mr. Laino where he is, put him on probation and in recovery.

Dated: New York, New York
       August 18, 2008

                              Respectfully submitted,


                              _____
                              RONALD L. KUBY [RK-1879]
                              DAVID PRESSMAN [DP-9136]

                              Law Office of Ronald L. Kuby
                              119 West 23rd Street, Suite 900
                              New York, New York 10011
                              (212) 529-0223 (t)
                              (212) 529-0644 (f)

                              Attorneys for Mr. Laino

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,                    )

               Plaintiff,                   )

    -against-                                )          08 CR 413-01 (JSR)

STEVEN LAINO,                                )

              Defendant.                   )
------------------------------------------------------------x

### AFFIRMATION OF SERVICE

       DAVID PRESSMAN, an attorney duly admitted to practice before the courts of the

State of New York, and a member of the bar of this Court, hereby affirms under the pains

and penalties of perjury that on August 18, 2008, he caused to be served two true copies of

the Presentence Memorandum of Steven Laino in the above-captioned matter upon AUSA

Julian Moore, Office of the U.S. Attorney, SDNY, One St. Andrew's Plaza, New York,

NY 10007 by hand and by ECF filing.

Dated: New York, New York
       August 18, 2008

                                    _____
                                    DAVID PRESSMAN [DP-9136]